**COCA–COLA BOTTLING COMPANY OF STEAMBOAT SPRINGS, a corporation, Plaintiff,**

**v.**

**The COCA–COLA COMPANY, a corporation, Defendant.**

**Civ. A. No. 67–C–244.**

United States District Court
D. Colorado.

July 16, 1969.

Raymond J. Turner and John C. Mitchell, III, Denver, Colo., for plaintiff.

Hans W. Johnson and William J. Hunsaker, Denver, Colo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

CHILSON, District Judge.

This matter was tried to the Court June 23 to June 26, 1969, inclusive. The Court heard the evidence and argument of counsel and continued the matter to formulate Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

For many years prior to the year 1960, David Calder and his two brothers bottled and sold soft drinks, including Coca-Cola, in the area of Steamboat

Springs and Glenwood Springs, Colorado, and Vernal, Utah. The Steamboat Springs operation, with which we are here principally concerned, was carried on by the plaintiff corporation. In the year 1960, David Calder and his immediate family acquired all of the stock of plaintiff corporation and thereafter, David Calder managed and controlled the Steamboat Springs operation.

The plaintiff's right to bottle and sell Coca-Cola was evidenced by a written agreement dated January 2, 1954, between the plaintiff and the Western Coca-Cola Bottling Company, an Illinois corporation (Western) referred to as a "Bottler's Contract" which granted to the plaintiff the sole and exclusive right to bottle and sell Coca-Cola in Routt, Jackson, and Grand Counties, and a portion of Moffat County, Colorado.

On or about June 23, 1954, another agreement was entered into between the plaintiff and Western, referred to as a "Bottler's Pre-Mix Contract" wherein plaintiff was granted the sole and exclusive right to distribute and sell Coca-Cola in Pre-Mix vending machines in the same territory.

The defendant acquired Western's rights in these two agreements.

After David Calder acquired control of the plaintiff, the plaintiff was repeatedly criticized by Western and the defendant for failure to follow standards of quality and for lack of cleanliness and orderliness in the plant and its operation. The plaintiff was also criticized by the State Board of Health of Colorado for failure to keep the plant in a clean and orderly condition.

During the same period, the plaintiff was having financial difficulties and in September 1963, was delinquent in the payment of its syrup account to the defendant in an amount in excess of $4,000.

On September 17, 1963, the defendant stopped shipment of syrup to the plaintiff because of the plaintiff's failure to pay its syrup account. At David Calder's request, a conference was had at Steamboat Springs, Colorado, on October 3, 1963, between Mr. Adams and Mr. Norris representing the defendant, and David Calder and his son, Perry Calder. At this conference, the quality reports of plaintiff's operations, the plaintiff's financial condition, the delinquent syrup account, and other pertinent matters were discussed. Since plaintiff could not serve its territory with Coca-Cola without syrup, and since the plaintiff was unable to obtain syrup because of its inability to pay the syrup account, discussion was had as to who would serve plaintiff's territory if its contracts were terminated. Calder stated that if his territory had to be served by someone else, he would like to see either his brother at Glenwood Springs or his brother at Vernal have it. Defendant's representatives suggested that Calder surrender his contracts to avoid the delay incident to giving the termination notices provided in the contracts and thereby facilitate the transfer of the territory to one of his brothers. Calder got his copies of the contracts and surrendered them to Norris and Adams. The plaintiff's territory was transferred to David Calder's brother at Vernal, Utah, who assumed responsibility for the plaintiff's delinquent syrup account. Plaintiff's copies of the contracts were mailed to the defendant's office at Atlanta, Georgia, were there cancelled and returned to the plaintiff.

On October 20, 1963, David Calder wrote the defendant on the plaintiff's stationery as follows:

"We are concluding the affairs of the Coca-Cola Bottling Co. of Steamboat Springs, and wonder about the syrup account with your good company.

"We were told that the Coca-Cola Bottling Company of Vernal, Utah, are to pay the syrup account to you. Have they paid it as yet.

Yours truly,

Dave Calder."

Although no reply to this letter is in evidence, the testimony of Mr. Norris

that the brother at Vernal assumed the plaintiff's syrup bill is not controverted.

Plaintiff claims the defendant wrongfully terminated the two contracts by cancelling the contracts without giving written notice of termination as provided in the contracts.

The defendant claims the contracts were mutually cancelled and rescinded by the parties and, therefore, such notice was not required to be given.

The "Bottler's Contract" provided that so long as the plaintiff shall comply with the terms of the contract, the rights of the plaintiff under the contract shall remain in full force and effect. The "Bottler's Contract" further provided:

"In consideration of the above and foregoing, it is agreed by and between the Parties hereto, that upon failure of either Party to this contract to perform its obligations under this instrument, according to any stipulations or conditions herein, and if said failure shall remain for thirty days after due notice sent by mail to the last named place of business of the Party violating the stipulations and conditions of this contract, then the other Party shall have the right to terminate this contract after thirty days' written notice, which said notice must be sent by registered mail to the last known place of business of the Party so violating this contract."

The "Pre-Mix Contract" provided that if there is a claim by Western that plaintiff has breached its contract, the contract can be cancelled provided that notice be served upon the plaintiff specifying the grounds of the alleged breach and the failure of the plaintiff to remove the grounds of complaint within sixty days after service of the notice.

Admittedly, the defendant did not give the notices of termination mentioned in the two contracts.

Included in the "Bottler's Contract" is a provision:

"If cash does not accompany the order for syrup, then the party of the first part (Western) is to have the right to draw on party of the second part (plaintiff) with bill of lading attached for the full purchase price."

■ The plaintiff claims that the failure of the defendant to utilize this method of filling the plaintiff's orders for syrup instead of stopping shipments constituted a breach of the "Bottler's Contract"

The Court finds that no request was made by the plaintiff to the defendant for shipment of syrup under that provision of the agreement. The Court further finds that plaintiff's financial condition was such that it would have been a useless act, for on September 12, 1963, five days before the stop order on further shipments was made by the defendant, the plaintiff had issued its check to the defendant for $1,848.15, which was returned marked "insufficient funds" (see Exhibit BBBBBBB).

## CONCLUSIONS OF LAW

■ The Court concludes as a matter of law that the "Bottler's Contract" and "Pre-Mix Contract" were cancelled by mutual agreement between the plaintiff and defendant on October 3, 1963; that the agreement for cancellation was supported by good and valuable consideration; by virtue of said cancellation, the defendant was not required to give notice of termination of the contracts as provided therein; the defendant was not obligated to furnish syrup to the plaintiff, and "* * * draw on party of the second part (plaintiff) with bill of lading attached for the full purchase price." as provided in the "Bottler's Contract"; and that the defendant is entitled to judgment for dismissal of the plaintiff's complaint and for its costs.

It is therefore ordered that judgment of dismissal of the plaintiff's complaint enter forthwith and that defendant have judgment for its costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.